UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 10-237-GWU

VICKIE L. RIDNER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

    3.       The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

    4.       At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

    5.       If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

then an award of benefits may, under certain circumstances, be had.  E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Vickie L. Ridner, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar and cervical spine.  (Tr. 20).  Nevertheless, the ALJ concluded that the plaintiff, born on May 18, 1956, was capable of lifting 50 pounds occasionally and 25 pounds frequently with the ability to occasionally stoop, crouch, crawl, and climb ladders, ropes, and scaffolds, to frequently balance, kneel, and climb ramps and stairs, and needed to avoid concentrated exposure to vibration.  (Tr. 21).  She

5

presented a hypothetical question reflecting these conclusions to a Vocational Expert (VE), who testified that such a person could perform the plaintiff's past relevant work as a warehouse picker/packer as it is generally performed in the economy, although the job as specifically performed by the plaintiff involved lifting up to 80 pounds.  (Tr. 449-50).  The VE further testified that if the plaintiff were limited to "light" and "sedentary" level work with the same non-exertional limitations, there would be other jobs she could perform.  The VE proceeded to give examples of such jobs and the numbers in which they existed in the state and national economies.  (Tr. 450-1).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.  There is an additional issue in that the plaintiff's Date Last Insured (DLI) for DIB purposes was March 31, 2004, meaning that she needed to establish disability prior to that date in order to be entitled to these benefits.  Her SSI application was filed April 26, 2005 (Tr. 330), meaning that she would not be eligible for SSI benefits prior to that date.  Both applications alleged the same onset date of January 16, 2003.  (Tr. 75, 330).

The primary focus of the plaintiff's allegation of disability was lower back pain, which radiated down her legs.  (Tr. 432).  She also had neck problems.  (Id.).  In addition, she described vertigo, reflux disease, depression, and anxiety, which

the ALJ found were non-severe.  (Tr. 20-21).  Mrs. Ridner testified that she was unable to perform very many activities including household chores, that she was unable to stand, walk, or sit for long periods, and that none of her doctors would release her to return to work.  (Tr. 433-36).

The plaintiff's main issue on appeal is that the ALJ improperly rejected the opinions of her treating physicians in favor of the opinions of non-examining sources who did not review the entire case record and who did not comment on the restrictions provided by the treating physicians.  The court agrees with the plaintiff, and a remand will be required for further consideration.

The medical evidence shows that the plaintiff began complaining of a lumbar strain in December, 2002 (Tr. 205) and was seen for the problem over the next several years by family physicians Drs. Ashcraft and Koo at Summitt Medical Group and by orthopedic surgeons Richard Hoblitzell and Michael Grefer.  Dr. Koo diagnosed chronic back pain (e.g., Tr. 261, 294-5), and submitted a physical medical assessment form in February, 2007 limiting Mrs. Ridner to lifting a maximum of 5 pounds, standing or walking only one hour in an eight-hour day and sitting four hours, along with additional non-exertional restrictions.  He cited findings of degenerative disc disease on an MRI, and added that the plaintiff was unable to work secondary to pain.  (Tr. 256-8).

The orthopedic surgeons, Dr. Hoblitzell and Dr. Grefer, were partners in Commonwealth Orthopedic Centers. (Tr. 300). Dr. Hoblitzell began treating the plaintiff in March, 2003, and continued to see her through July, 2005 (Tr. 178-80, 314). He noted a limited lumbar range of motion and a slightly diminished right ankle reflex and obtained an MRI showing degenerative disc disease in the lumbar spine without obvious nerve root impingement. (Tr. 180, 319-20). There was also a bone scan showing no significant abnormalities. (Tr. 179). Therefore, Dr. Hoblitzell ordered a functional capacity evaluation (FCE), followed by work hardening. The FCE report is not in the transcript, but Dr. Hoblitzell reported that Mrs. Ridner did not progress well in work hardening, having demonstrated a lifting ability of only approximately 15 pounds. (Tr. 179). He added that she strained her lower back lifting a 25 pound weight while doing work hardening. (Id.). He noted that "due to her poor progress in therapy and her re-exacerbation of symptoms, I am going to recommend permanent light duty restrictions." (Id.). Although the plaintiff made subsequent visits to Dr. Hoblitzell, he did not modify the restrictions.

Mrs. Ridner sought a second opinion from Dr. Grefer, and beginning in January, 2006, he became her regular orthopedic physician. Dr. Grefer noted that older x-rays showed what he described as "pretty significant sclerosis" of the left sacroiliac joint, as well as significant spur formation and wedging of mid-thoracic segments. (Tr. 313). He ordered additional testing, and a new MRI in April, 2006

showed disc bulging, spondylosis, and facet disease, but nerve roots appeared to exit uninhibited.  (Tr. 311).  EMG/NCV testing was interpreted as normal later in 2006 and Dr. Grefer attempted treatment in 2006 and 2007 with various medications, and injections, as well as a temporary brace.  (Tr. 306-10).  He consistently signed statements for the plaintiff's Worker's Compensation insurer between June, 2006 and January, 2008 stating that she was "off work."  (Tr. 321-29).

Dr. Grefer also prepared a physical assessment form in February, 2008 limiting Mrs. Ridner to lifting 3 to 5 pounds occasionally and nothing frequently, and to standing and walking one to two hours and sitting three to four hours in an eight-hour day, as well as having additional non-exertional imitations.  (Tr. 301-3).  The reasons given for the restrictions were "multilevel discogenic problems with disc bulging, spondylosis, facet disease, multilevel facet hypertrophy, radiculopathy; pain, weakness, tingling, numbness of lower extremities; lumbosacral syndrome with decreased motion, spasm, muscle weakness, decreased knee and ankle reflexes, decreased sensation, weakness, heel-toe gait and extensor hallucis longus function, positive straight leg raising bilaterally, crepitus and positive Freiberg sign of both knees."  (Tr. 301).

Finally, Dr. Grefer stated in a letter that Mrs. Ridner had been treated in his office since 2003 for problems with her lumbosacral spine, pelvis, and lower

extremities that had progressively worsened over time.  He again described positive findings on examination including decreased knee and ankle reflexes and decreased sensation.  He concluded that due to the severity of her condition she was unable to perform any gainful employment and had not been released to return to work.

The ALJ declined to accept the opinions of Dr. Grefer and Dr. Koo because she felt that they were not supported by objective findings in their respective office notes or by the objective studies such as the MRIs, bone scan, and electrodiagnostic testing.  Instead, she gave essentially controlling weight to the non-examining opinion of Dr. P. Saranga, who reviewed the record as of September 9, 2005.  (Tr. 25, 219-24).

It is a well settled principle of Social Security law that the opinions of treating sources are given greater weight that the opinions of non-examining sources. See, e.g., Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992); 20 C.F.R. § 404.1527(d)(1).  If the opinion of a treating source is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other evidence, it is entitled to controlling weight, but even when it is not given controlling weight, the ALJ must consider a list of factors including the length of treatment relationship and frequency of examination, the nature and extent of treatment relationship, the amount of relevant evidence the

medical source provides, how consistent the medical source's opinion is with the record as a whole, and whether the medical source is a specialist.  Id.

In the present case, the ALJ focused on only one of the enumerated factors, the consistency of the medical source's opinions with the record as a whole, in exclusion to the other factors.  Possibly this is because the other factors tend to support Dr. Grefer's opinion, in view of the fact that he was a specialist with a long treatment relationship who ordered extensive testing and had extensive test results available.

Section 404.1527(f) and Social Security Ruling (SSR) 96-6p also provide ALJs with guidance in the weight which can properly be given to the opinions of state agency medical consultants such as Dr. Saranga.  While noting that these sources are experts in Social Security evaluation, a greater degree of medical evidence, qualifications, and explanations for their opinions are required than for treating sources, and their opinions must be supported by the evidence in the record, specifically including any evidence received by the ALJ that was not before the state agency, the consistency of the opinion with the record as a whole, including other medical opinions and other factors, such as the specialization of the state agency consultant. SSR 96-6p, at *2.  The ruling goes on to state that there are circumstances in which the opinion of the state agency non-examiner "may be entitled to greater weight than the opinions of treating or examining sources," and

gives as an example a situation in which the non-examiner has the benefit of a review of "a "complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." Id. at *3.

In the present case, Dr. Saranga completed his opinion in 2005, before either of the treating physician opinions had been received, and he obviously could not comment on any reasons he might have for disagreeing with Dr. Koo and Dr. Grefer. Nor does it appear that there was any specialist opinion available to him that was not available to the other sources. The Commissioner maintains that the example given in SSR 96-6p was not intended to be exclusive, but it is clear that the Commissioner's regulations contemplate a limited role for non-examining opinions in cases where a complete case record has not been reviewed, where treating source opinions are available. See Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir. 2007).

Moreover, it does not appear that either Dr. Saranga or the ALJ took into account the FCE evaluation, or Dr. Hoblitzell's restriction to light work. Although the actual FCE report is not in the transcript the results were discussed by more than one source. As previously noted, Dr. Hoblitzell showed that the plaintiff demonstrated a lifting ability of only 15 pounds, which would be less than light level

as defined by the regulations. (Tr. 179). Another examiner, Dr. John Kelly, also had the FCE available for review and commented that it was valid and the plaintiff had not demonstrated the ability to do all of her job requirements. (Tr. 173). He further noted that she attempted to complete a work hardening program but made no progress and demonstrated a lifting ability of only 15 pounds. (Id.). These highly significant findings are not mentioned by Dr. Saranga or by the ALJ, and render the ALJ's reliance on Dr. Saranga even more suspect in view of the fact that it appears that the notes of Dr. Kelly and Dr. Hoblitzell would have been available at the time of his report.

     As to the specifics of the ALJ's reasoning for giving no weight to the treating sources, it is true that there is little evidence in the office notes of radiculopathy in terms of sensory or reflex changes, although Dr. Hoblitzell did notice that the right ankle reflex was slightly diminished. (Tr. 180). However, the ALJ accepted that the plaintiff's degenerative disc disease of the cervical and lumbar spine was a "severe" impairment, and physical examinations from Drs. Kelly, Hoblitzell, and Grefer did show positive findings such as tenderness and spasm, reduced range of motion, and positive straight leg raising testing. (E.g., Tr. 175, 180, 305, 309, 312-13). Dr. Grefer tried repeatedly to refer his patient to a pain management specialist, but was denied by the plaintiff's Worker's Compensation carrier. (Tr. 307-9). Therefore, while the medical records do not contain overwhelming evidence supporting an

award of benefits, they do provide more support for the treating physicians' opinions than implied in the ALJ's decision.  With the lack of evidence available to Dr. Saranga, and his failure to comment on the results of the FCE, this is clearly a case in which the ALJ should have obtained the opinion of a medical advisor, at the very least, if the opinions of the treating sources were to be disregarded.

The decision will be remanded for further consideration.

This the 16th day of August, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**